FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 29, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MARIA L.,[1]

    Plaintiff,

v.

LELAND DUDEK, Acting Commissioner of Social Security,[2]

    Defendant.

No.    4:24-cv-05122-EFS

**ORDER AFFIRMING THE ALJ'S DENIAL OF BENEFITS**

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] Leland Dudek became the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, and section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), he is hereby substituted as the defendant.

DISPOSITIVE ORDER - 1

Due to psoriasis, psoriatic arthritis, depression, degenerative disc disease of the lumbar spine, left shoulder osteoarthritis, left shoulder bursitis, adhesive capsulitis of the left shoulder, and migraines, Plaintiff Maria L. claims she is unable to work full-time and applied for social-security benefits. She appeals the denial of benefits by the Administrative Law Judge (ALJ) on the grounds that the ALJ erred in failing to deem her illiterate and improperly relied on VE testimony at step five that did not consider her illiteracy.  Because the record reflects that Plaintiff had a marginal (sixth grade) education, the Administrative Law Judge's (ALJ) nondisability decision is adequately explained and supported by substantial evidence. For the reasons that follow, the ALJ's decision is affirmed.

## I.     Background

In February 2021, Plaintiff filed an application for benefits under Title 2, claiming disability beginning May 2, 2019, based on the physical impairments noted above.[3] After the agency denied her

---

[3] AR 269-272.

application initially and on reconsideration[4], Plaintiff requested a hearing before an ALJ.[5] ALJ MaryKay Rauenzahn held a telephonic hearing in August 2023, during which Plaintiff testified with assistance of a translator and a vocational expert testified.[6] On October 11, 2023, the ALJ issued a decision denying the claim.[7] The Appeals Council denied Plaintiff's request for review, and she filed a timely appeal to this Court.[8]

The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[9] As to medical opinions, the ALJ found:

---

[4] AR 170, 177.

[5] AR 182.

[6] AR 66-87.

[7] AR 17-43.

[8] AR 1-9.

[9] AR 29-33.

- The opinions of state agency consultants Tim Schofield, MD; Wayne Hurley, MD; and Howard Platter, MD, to be partly persuasive.
- The opinions of state agency psychologists Renee Eisenhauer, PhD; Matthey Comrie, PsyD; Steven Haney, MD; and Gary Nelson[10] to be partly persuasive.
- The opinion of consultative examiner K. Mansfield-Blair, PhD, to be not fully persuasive.
- The opinion of consultative examiner Linda Lindman Wolcott, PhD, to be generally persuasive.
- The opinion of treating source Javier Huerta, PA, to be on an issue reserved to the Commissioner.[11]

As to the sequential disability analysis, the ALJ found:

---

[10] The record does not identify Gary Nelson's degree but lists his name after "MC/PC Signature" and identifies "Medical Specialty Code: 38 Psychology." AR 159.

[11] AR 33-36.

- Plaintiff met the insured status requirements of the Social Security Act through March 31, 2024.
- Step one: Plaintiff had not engaged in substantial gainful activity since her alleged onset date of May 2, 2019.
- Step two: Plaintiff had the following medically determinable severe impairments: psoriasis; psoriatic arthritis; depressive disorder/reactive depression; lumbar spine degenerative disc disease with L5 radiculopathy; left shoulder osteoarthritis; left shoulder bursitis; adhesive capsulitis of the left shoulder; and migraines.
- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments and specifically considered Listings 1.15, 1.18, 14.09, 11.02, and 12.04.
- RFC: Plaintiff had the RFC to perform work at the light exertional level with the following exceptions:

   [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently. [Plaintiff] can stand and/or walk for approximately four hours and sit for approximately four hours, in an eight-hour workday. [Plaintiff] cannot climb ladders, ropes and scaffold and can occasionally climb stairs and ramps. [Plaintiff] can

occasionally stoop, crouch, kneel and crawl. [Plaintiff] can frequently handle and finger bilaterally. [Plaintiff] can occasionally reach overhead and frequently reach in all other directions with the left upper extremity. [Plaintiff] should have no exposure to extreme cold, extreme heat, and vibrations, and cannot perform work in near proximity to moving mechanical parts, nor work in high, unprotected places, as rated by the Selective Characteristics of Occupations of the Dictionary of Occupational Titles (SCO-DOT). [Plaintiff] can understand, remember, and carry out simple instructions and tasks. [Plaintiff] cannot perform work on a moving conveyor belt, nor work that requires hourly quotas.

- Step four: Plaintiff was unable to perform her past relevant work as a fruit worker and a picking crew supervisor.

- Step five: Plaintiff was able to perform jobs available in the national economy in substantial numbers as a small parts assembler (DOT # 706.684-022, light, SVP 2), cafeteria attendant (DOT # 311.677-010, light, SVP 2), counter clerk (DOT # 249.366-010, light, SVP 2), and an electronics worker (DOT # 726.687-010, light, SVP 2).[12]

---

[12] AR 27-37.

Plaintiff timely requested review by this Court.[13]

## II.  Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[14] and such error impacted the nondisability determination.[15] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[16]

---

[13] ECF No. 1.

[14] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[15] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[16] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a

## III.  Analysis

Plaintiff seeks relief from the denial of disability on the single ground that the ALJ erred in failing to deem Plaintiff to be illiterate and argues that the ALJ erred in relying on VE testimony that Plaintiff could find work in the general economy because the ALJ's hypothetical to the VE did not include a limitation that Plaintiff was illiterate.  The Commissioner argues there was no error because the regulation was amended in 2020 and the ALJ reasonably found pursuant to the amended regulation that Plaintiff's sixth grade education, although not in the United States, and ability to read and write simple sentences in Spanish was properly classified as a "marginal education" and not illiteracy.  As is explained below, the

---

whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

Court agrees with the Commissioner and affirms the ALJ's nondisability finding.

## A. Step Five: Plaintiff fails to establish consequential error

Plaintiff argues the ALJ erred in relying on the VE testimony and by failing to include a limitation that Plaintiff was illiterate. She argues that she is not able to read and write in English and that the VE identified jobs which require a language level of two, and therefore would require her to be able to read and write English.

### 1. Standard

At step five, the ALJ has the burden to identify specific jobs existing in substantial numbers in the national economy that claimant can perform despite their identified limitations.[17] At an administrative hearing, an ALJ may solicit vocational expert testimony as to the availability of jobs in the national economy.[18] A vocational expert's testimony may constitute substantial evidence of the number of jobs

---

[17] *Johnson v. Shalala*, 50 F.3d 1428, 1432 (9th Cir. 1995). *See* 20 C.F.R. § 404.1520(g).

[18] *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 2011).

DISPOSITIVE ORDER - 9

that exist in the national economy.[19] The ALJ's decision regarding the number of alternative occupations must be supported by substantial evidence.[20]

At step five, the ALJ considers the claimant's background and RFC, along with the testimony of the vocational expert, to decide whether the claimant can perform available jobs notwithstanding his functional limitations.[21] If the vocational expert's "opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the *Dictionary*, then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled":[22]

> For a difference between an expert's testimony and the *Dictionary's* listings to be fairly characterized as a

---

[19] *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

[20] *Farias v. Colvin*, 519 F. App'x 439, 440 (9th Cir. 2013) (unpublished). *See Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[21] 20 C.F.R. §§ 404.1520(g), 404.1560(c),; *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Hill*, 698 F.3d at 1161.

[22] *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016).

> conflict, it must be obvious or apparent. This means that the testimony must be at odds with the *Dictionary's* listing of job requirements that are essential, integral, or expected. This is not to say that ALJs are free to disregard the *Dictionary's* definitions or take them with a grain of salt—they aren't. But tasks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about. Likewise, where the job itself is a familiar one—like cashiering—less scrutiny by the ALJ is required.[23]

The ALJ—and the reviewing court—are to consider not only the *Dictionary* and SCO, but also common experience, to determine whether there is an apparent conflict.[24]

---

[23] *Id.* at 808; *see also* SSR 00-4p ("When a [vocational expert] . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that [vocational expert] . . . evidence and information provided in the [*Dictionary*].").

[24] *Lamear v. Berryhill*, 865 F.3d 1201, 1205–06 (9th Cir. 2017); *see also* SSR 00-4p (requiring the ALJ to consider the *Dictionary* and SCO); SSR 83-14 (referencing the *Dictionary* and SCO).

### 2. Analysis of the ALJ's Findings

The ALJ found that Plaintiff had a marginal education pursuant to 20 C.F.R. § 404.1564.[25] Plaintiff reported in her Adult Disability Report that she had completed the 6th grade in 1989 in Garcia De La Cadena, Mexico.[26] She reported that she was not in any type of special education program, that she could both read and write simple messages, such as a shopping list or short note and that she used written Spanish in most everyday situations.[27]

The Court concludes, based on Plaintiff's representations, that the ALJ properly found Plaintiff to have a marginal education and did not find her to be illiterate.

In 2020, 20 C.F.R. § 404.1564(b) was amended to omit the requirement that the ALJ consider the claimant's ability to read and understand English when evaluating education. The amended

---

[25] AR 36.

[26] AR 313.

[27] *Id.*

regulation was effective April 27, 2020.[28]  Plaintiff's claim was filed in February 2021; therefore, the amended regulation applies.

20 C.F.R. § 404.1564 provides:

(1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.

(2) Marginal education. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.

(3) Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.

Plaintiff implies that the newer regulation was vague in some way as to the fact that the new regulation contemplates an education in the United States only.  The Court finds this argument non-

---

[28] *See* 85 FR 10586-01, 2020 WL 885690 (Feb. 25, 2020).

persuasive. In finalizing the amended regulation, SSA explained that it was eliminating the education category –"inability to communicate in English"— because it "is no longer a useful indicator of an individual's educational attainment or of the vocational impact of an individual's education because of changes in the national workforce since we adopted the current rule more than 40 years ago."[29]

Additionally, on March 9, 2020, the Administration published a new Social Security Ruling, SSR 20-1p, which interpreted the new regulation.[30]

Social Security Ruling, SSR 20-01p provides:

II. Category of Illiteracy

**A. Generally**
We consider an individual illiterate if he or she cannot read or write a simple message, such as instructions or inventory lists, even though the individual can sign his or her name.

---

[29] 2020 WL 885690 at *10586.

[30] Social Security Ruling, SSR 20-01p: How We Determine an Individual's Education Category. 2020 WL 1083309, n. 8 (Mar. 9, 2020).

> *We will assign an individual to the illiteracy category only if the individual is unable to read or write a simple message in any language.*
>
> **B. Formal Education and the Ability To Read and Write a Simple Message**
> Generally, an individual's educational level is a reliable indicator of the individual's ability to read and write a simple message. A strong correlation exists between formal education and literacy, which under our rules means an ability to read and write a simple message. *Most individuals learn to read and write at least a simple message by the time they complete fourth grade, regardless of whether the schooling occurred in the United States or in another country.* We will therefore use an individual's formal education level as the starting point to determine whether the individual is illiterate.[31] (emphasis added)

It is clear that the ALJ's finding that Plaintiff's sixth grade education in Mexico and her admitted ability to read and write short, simple messages in Spanish preclude a finding that she is illiterate.

Plaintiff argues in her Reply that even though 20 C.F.R. § 404.1564 was amended the VE testimony remains flawed because the VE identified jobs with a Dictionary of Occupational Titles (DOT)

---

[31] Social Security Ruling, SSR 20-01p: How We Determine an Individual's Education Category | Pending/Proposed Regulations | United States | Westlaw Precision. (last viewed April 25, 2025.)

DISPOSITIVE ORDER - 15

language level of 1 or 2 and those jobs require that Plaintiff be able to read and write English and thus a conflict existed that the ALJ did not resolve.[32] This argument is also unavailing.

The Court finds no conflict existed.  For purposes of identifying and classifying jobs pursuant to the DOT, a job at language level 2 does not provide that *English* language skills are required, and rather only requires clear language skills of no particular language.[33]  Pursuant to the DOT, a job with a language level of 3 does indicate that *English* language skills are required, but no such requirement exists at language levels 1 and 2.[34]  Each of the jobs identified by the VE and relied on by the ALJ has a language level of 2 or lower.[35]

Plaintiff has erred in interpreting 20 C.F.R. § 404.1564 to require specific proficiency in English language skills to prove literacy.

---

[32] ECF No. 15.

[33] Dictionary Of Occupational Titles, 4th Edition (1991) Appendix C: Components of the Definition Trailer.

[34] *Id.*

[35] AR 37.

The Court finds that the ALJ's consideration of Plaintiff's educational level and the VE's testimony was reasonable. Accordingly, the Court finds that the ALJ did not err in accepting the VE's testimony regarding the number of jobs in the national economy which Plaintiff could perform and declines to remand as to this issue.

## IV. Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1. The ALJ's nondisability decision is **AFFIRMED**.

2. The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 10 and 14,** enter **JUDGMENT** in favor of the **Commissioner**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 29th day of April 2025.

EDWARD F. SHEA
Senior United States District Judge